UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES TOUHEY, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:10CV1440 JCH |
| ) | |
| HARTFORD LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment, and Defendants Hartford Life and Accident Insurance Company and Hartford Life and Accident Insurance Company, GBD Claim and Service Operations'[1] (hereinafter "Hartford") Motion for Summary Judgment, both filed May 7, 2012. (ECF Nos. 43, 44). The motions are fully briefed and ready for disposition.

## BACKGROUND

From June 2, 2003, to May 17, 2007, Plaintiff James Touhey was employed by Maryville University of St. Louis ("Maryville") as a Development Director--Planned Giving (fundraiser). (Complaint ("Compl."), ¶¶ 4, 9; Defendants Hartford Life and Accident Insurance Company and Hartford Life and Accident Insurance Company, GBD Claim and Service Operation's Statement of Uncontroverted Material Fact ("Hartford's Facts"), ¶ 2). In May, 2007, Plaintiff was a participant in Maryville's Group Disability Income Insurance Plan (the "2003 Plan"). (Hartford's Facts, ¶ 4). The 2003 Plan is an employee welfare benefit plan within the meaning of the Employee Retirement

---

[1] According to Hartford, although Plaintiff attempted to name "GBD Claim and Service Operations" as a Defendant, Hartford Life and Accident Insurance Company, GBD (Group Benefits Division) Claim and Service Operations is an operating division of Hartford, not a separate legal entity. (Hartford's Motion for Summary Judgment, P. 1 n. 1).

Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").  (Id., ¶ 5; Compl., ¶¶ 1, 4).  The 2003 Plan was funded by a policy of insurance issued by Hartford Life Group Insurance Company[2], Group Insurance Policy No. 83154375, effective February 1, 2003 (the "2003 Policy"). (Hartford's Facts, ¶ 6).  According to Hartford, Hartford Life and Accident Insurance Company later issued Policy No. GLT-394044 to Maryville, effective March 1, 2007 (the "2007 Policy"), to fund benefits under the 2003 Plan, which in turn was amended and renamed the Group Long Term Disability, Basic Term Life, Supplemental Dependent Life, Supplemental Term Life, Basic Accidental Death and Dismemberment Plan for Employees of Maryville University of St. Louis (the "2007 Plan").  (Id., ¶ 7).[3]

The 2003 Policy contains, among others, the following relevant provisions:

### DISCRETIONARY AUTHORITY

The Policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.  The plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy.  The plan administrator has delegated sole discretionary authority to Hartford Life Group Insurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it....

*How do We define Disability?*

*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.

**Occupation Qualifier**

---

[2] According to Hartford, Hartford Life Group Insurance Company is the predecessor in interest to Hartford Life and Accident Insurance Company.  (Hartford's Facts, ¶ 6).

[3] Plaintiff maintains he never received a copy of the 2007 Plan.  (Plaintiff's Response to Hartford's Facts, ¶ 7).

> *Disability* means that during the *Elimination Period* and the following 36 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> > 1)   continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> >
> > 2)   not *Gainfully Employed*....
>
> **Earnings Qualifier**
>
> *You* may be considered *Disabled* during and after the *Elimination Period* in any month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience....
>
> *DEFINITIONS*
>
> ***Gainful Employment*** or ***Gainfully Employed*** means the performance of any occupation for wages, remuneration or profit, for which *You* are qualified by education, training or experience on a full-time or part-time basis, and which *We* approve and for which *We* reserve the right to modify approval in the future....
>
> ***Material and Substantial Duties*** means the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered....
>
> ***Regular Occupation*** means the occupation that *You* are performing for income or wages on *Your Date of Disability*.  It is not limited to the specific position *You* held with *Your* Employer....

(Administrative Record, attached to Hartford's Motion for Summary Judgment as Bates Range "Hartford B00001-B00545", at B00060, B00042, B00058, B00059).

The 2007 Policy contains, among others, the following relevant provisions:

> The benefits described in your booklet-certificate (Booklet) are provided under a group insurance policy (Policy) issued by the Hartford Life and Accident Insurance Company (Insurance Company) and are subject to the Policy's terms and conditions. The Policy is incorporated into, and forms a part of, the Plan.  The Plan has designated and named the Insurance Company as the claims fiduciary for benefits provided under the Policy.  The Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy....

## DEFINITIONS

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:

1) Your Occupation during the Elimination Period;

2) Your Occupation, for the 3 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

3) after that, Any Occupation....[4]

**Essential Duty** means a duty that:

1) is substantial, not incidental;

2) is fundamental or inherent to the occupation; and

3) cannot be reasonably omitted or changed.

Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty....

**Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

(2007 Policy and 2007 Plan, attached to Hartford's Motion for Summary Judgment as Exhibit B and labeled "Hartford A00001-59", at A00053, A00018, A00021).  Both the 2003 Policy and Plan and the 2007 Policy and Plan contain provisions conditioning the payment of disability benefits upon Hartford's receipt of proof of disability, and limiting the duration of benefits received as a result of mental illness.

On or about September 4, 2007, Plaintiff filed an application for long-term disability benefits with Hartford. (Hartford's Facts, ¶ 8). Plaintiff alleged that his disability resulted from the aggravation of numerous mental and psychological impairments, including depression and anxiety.

---

[4] There is no counterpart to the "Earnings Qualifier" in the 2007 Policy. (Hartford's Facts, ¶ 19).

(Compl., ¶ 11). Hartford eventually denied Plaintiff's claim in a letter dated December 20, 2007. (Hartford's Facts, ¶ 63). Plaintiff appealed Hartford's decision in a letter from counsel dated June 19, 2008, and Hartford affirmed its denial of Plaintiff's claim in a letter dated October 28, 2008. (Id., ¶¶ 64, 76). Hartford further denied Plaintiff's request for reconsideration in a letter dated June 9, 2009. (Id., ¶ 89). Hartford now concedes, however, that in analyzing Plaintiff's claim it erroneously relied on the provisions of the 2003 Policy and 2003 Plan, rather than the 2007 Policy and 2007 Plan. (Id., ¶ 9).

Plaintiff filed the instant Complaint on August 6, 2010, claiming that by wrongfully refusing to pay Plaintiff benefits Hartford violated ERISA and the underlying provisions of the Plan and Policy. As stated above, Plaintiff and Hartford filed competing Motions for Summary Judgment on May 7, 2012. (ECF Nos. 43, 44).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), cert. denied, 549 U.S. 887 (2006). "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted). See also King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 998-999 (8th Cir. 2005) (internal quotation marks and citations omitted) ("Where a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations, however,....the administrator's decision is reviewed only for abuse....of his discretion, and the administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable."). In reviewing for abuse of discretion, the Court must look to see if the administrator's decision was supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." King, 414 F.3d at 999 (internal quotation marks and citation omitted).  In making this determination, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." Id. (internal quotation marks and citation omitted).

In the instant case, the parties dispute whether this Court's review should be de novo, or merely for abuse of discretion.  The Court finds it unnecessary to resolve this conflict, because as stated above Hartford now acknowledges it utilized the wrong Policy and Plan provisions in analyzing Plaintiff's claim. (Hartford's Facts, ¶ 9).  Specifically, Hartford asserts it investigated Plaintiff's claim and concluded he was not disabled under the 2003 Plan's provisions.  (Memorandum in Support of Defendants' Motion for Summary Judgment, P. 2).  The Court's review of the record reveals the 2003 and 2007 Policies and Plans differ in significant respects, however.  For example, the definition of *disability* itself differs, and Plaintiff maintains it is easier to prove *disability* under the standards of the 2007 Policy.  (Plaintiff's Memorandum in Opposition of Defendant's Motion for Summary Judgment, PP. 3-4).  Under these circumstances, the Court finds "the proper remedy is to return the case to the administrator for reevaluation of the claim under what Hartford [now] says is the correct standard." King, 414 F.3d at 1005.

> The statute affords the courts a range of remedial powers under ERISA, 29 U.S.C. § 1132(a), and returning the case to a plan administrator for further consideration is often appropriate.  In particular, when an administrator abandons in litigation its original basis for denying benefits, the better course generally is to return the case to the administrator, rather than to conduct *de novo* review under a plan interpretation offered for the first time in litigation.  For [i]t is not the court's function *ab initio* to apply the correct standard to [the participant's] claim.  That function, under the Plan, is reserved to the Plan administrator.

Id. at 1005-1006 (internal quotation marks and citations omitted).  See also Monroe v. Life Ins. Co. of North America, 2007 WL 4564191 at *14 (E.D. Mo. Dec. 20, 2007) (citations omitted) ("Where

a plan administrator applies an improper definition to a key term, remand may be an appropriate remedy."); Schnare v. UNUM Life Ins. Co. of America, 2009 WL 3531768 at *9 (W.D. Mo. Oct. 27, 2009) (citation omitted) ("As there is no claim decision for the Court to review, the Court finds that remanding to the administrator for expedited review is appropriate in this case.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Hartford Life and Accident Insurance Company and Hartford Life and Accident Insurance Company, GBD Claim and Service Operations' Motion for Summary Judgment (ECF No. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is hereby **REMANDED** to the administrator, who shall reevaluate Plaintiff's claim for benefits under the terms and provisions of the 2007 Policy and 2007 Plan. The administrator shall make every effort to respond promptly, but in any event within ninety (90) days from the date of this Order.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending completion of the administrative review. The parties are directed to provide a joint status report to the Court in ninety (90) days, outlining the progress of the administrative process. To the extent any issues remain for this Court's review once the administrative review process has been completed, the parties can expect an expedited schedule.

Dated this 3rd day of July, 2012.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE